Riley, J.
This action of contract or tort seeks to recover for damage to the plaintiff’s automobile as the result of negligence of the defendant corporation in failing to exercise reasonable care toward the care and safekeeping of said automobile while allegedly in the defendant’s custody pursuant to a contract of bailment.
The declaration contains four counts, three based on the alleged contract of bailment and the other count in tort for conversion is predicated on the existence of the same contract of bailment. The answer consists of a general denial, a plea of contributory negligence and a specific denial of the existence of a contract or agreement between the plaintiff and the defendant.
At the trial there was evidence tending to show the following :
On Saturday, January 25, 1947, the defendant corporation was engaged in the business of operating an open *158 air parking area for the parking of privately owned motor vehicles of the general public. The defendant corporation conducted this business on a vacant lot of land situated on Beacon Street in the City of Boston on a portion of the vacant land between the building operated as the Bellevue Hotel and an office building at No. 15 Beacon Street. The defendant operated .its open air automobile parking business on this vacant lot under the name of ‘ ‘ Bellevue Parking Lot. ’ ’ This lot of land had a frontage of twenty-seven feet on Beacon Street and extended away from Beacon Street to a depth of about one hundred twenty-six feet from the inner edge of the northerly sidewalk on Beacon Street, adjacent to which this lot was situated. This parking lot or area had only one exit or . entrance for ingress and egress of automobiles. This exit or entrance was by way of a driveway running from Beacon Street across the sidewalk and onto the lot. Except on the side bordering on Beacon Street, which was open and unfenced, the lot was enclosed on its other three sides by buildings, all of which were five or six or more stories in height.
On Saturday, January 25, 1947, the defendant, as always theretofore, employed only one man as its regular attendant in charge of this parking lot and his hours of duty on that day as prescribed by the defendant corporation were from eight o’clock in the morning to six o’clock in the evening. On that date the defendant maintained an overhead painted wooden sign which faced Beacon Street and was suspended from the wall of the Bellevue Hotel and was located generally above and to the left of the driveway by which prospective customers entered the lot from Beacon Street. Upon this sign were printed the words “Parking: 8 A. M. to 6 P. M. Bates 35$ first hour, and 15 é each additional hour. $1.00 all day. ’ ’
*159 At about 4:30 o’clock on the afternoon of Saturday, January 25, 1947, the plaintiff’s wife, who was the agent of the plaintiff for all purposes material to this case, drove the plaintiff’s automobile from. Beacon Street across the sidewalk onto the defendant’s parking lot. The plaintiff’s wife had occasionally used the defendant’s parking lot before this day, but could not remember how many times, or whether she had ever used it before on a Saturday afternoon. As she drove in she paid no particular attention to the sign or any of the lettering upon it, and did not know of the content of the sign nor did she rely thereon, but did notice that there was no other sign anywhere on the premises indicating that the attendant in the employ of the defendant was not then on duty, or that the parking lot was then unattended or closed for business. Also, at the time the plaintiff’s wife drove in, the defendant’s parking lot was so filled with automobiles that she found it necessary to drive the plaintiff’s car to a point in the rear of the parking area furthermost from Beacon Street in order to reach a position into which her car could be backed into the lot for parking. Here she was met by a young-man who offered to park the automobile for her and asked that she leave the keys in the car. On prior occasions when the plaintiff’s wife had parked a car in the defendant’s parking- space she had always been requested in accordance with the practice of the defendant to leave the keys in the car. The plaintiff’s wife recognized that the young man was not the same man who had been in attendance at the parking space on other occasions when she had left a car there and noticed no person other than this young man who appeared to her to be in attendance at the time. Upon being- asked by the young man how long she intended to leave the car in the parking lot the plaintiff’s wife informed him that she intended to do some shopping before the *160 stores closed at five o’clock and that she would be back within a short time. The young man then suggested that the charge would-be fifteen cents (15$) and the plaintiff’s wife paid him the amount suggested in cash. The plain- . tiff’s wife was unable to recall any prior occasion when she had paid less than thirty-five cents (35$) for parking and did not know the closing hour of the parking lot. The plaintiff’s wife was not offered, nor given, nor did she request a parking check or receipt for the car. The plaintiff’s wife then walked from the defendant’s parking lot, did her shopping in a nearby store and later that afternoon at about 5:15 P. M. returned to the lot for the plaintiff’s automobile. At the time the young man who had received the plaintiff’s car was not present. Several of the cars which had been in the parking space at the time she had first left her husband’s car there were then gone and she was unable after a thorough search of the entire parking area to locate the plaintiff’s car. As there was no attendant- then present, she walked from the parking area to a nearby hotel and telephoned to the Boston Police to report that the plaintiff’s automobile was missing from the parking lot. As a result of this telephone call she then returned to the parking lot, noticed the sign and the lettering on it for the first time, searched for her husband’s car again and, unable to find it, she then walked to the nearby Boston Police Station on Joy Street, Boston, where she personally reported the incident to the officer in charge. She then returned to her home. The plaintiff’s automobile had not been recovered prior to the commencement of this action.
The person employed by the defendant as its regular attendant at the parking lot in question on January 25, 1947, went on duty on the morning of that day at eight o ’clock and remained on duty there continuously from that time until four o’clock on the afternoon of that day. At *161 noontime on that day the defendant’s regularly employed attendant had eaten his noonday meal on the premises from a box lunch, which he had brought with him in accordance with his regular practice, and the requirement of the defendant corporation. At about four o’clock on the afternoon of that day and without the knowledge or permission of the defendant, or of any authorized officer or agent of the defendant, the defendant’s regularly employed attendant left the defendant’s parking space and did not again return to the parking space on that date. Before leaving the defendant’s regular attendant did not post any sign or other means of notifying the public or prospective customers in the parking space that the parking space was, after the time of his departure at four o’clock, unattended or that it was closed for business. The attendant’s instructions from the defendant were not to put up such a sign or other means of such notification when he left the parking space unattended. The defendant’s regularly employed attendant did not at any time before leaving at four o’clock authorize any other person in his stead to be in attendance at the defendant’s parking space in his or in the defendant’s behalf during his absence during the remainder of that working day. Neither the plaintiff nor his wife had any actual knowledge that the young man who talked with the plaintiff ’s wife was not the authorized attendant or agent of the defendant corporation to transact the defendant’s regular business at the parking space.
At the close of the trial the plaintiff duly filed the following requests for rulings of law which the trial judge acted upon as indicated below.
(1) On the undisputed facts the plaintiff is entitled to recover as a matter of law. Denied * There *162 was no agreement between the parties save as to damages and, the facts regarding the essential elements of the plaintiff’s case are in dispute. (2) A finding for the defendant on the undisputed facts is not warranted as a matter of law. Denied. There was no agreement between the parties save as to damages and the facts regarding the essential elements of the plaintiff’s case are in dispute. (3) The public display by the defendant of the sign bearing the words “Parking: 8 A. M. to 6 P. M.” constituted a representation by the defendant to the plaintiff as a member of the public, in the absence of clear notice to the contrary, that the defendant’s premises were open for the defendant’s business of parking automobiles at any time between the indicated hours. Denied. As far as applicable to the case pleaded I find tha,t the defendant displayed a sign reading “Parking 8 A. M. to 6 P. M.” but I find that the plaintiff did not see the sign before entering and did not in any way rely on the sign in question. (4) The public display by the defendant of the sign bearing the words: “Parking 8 A. M. to 6 P. M.” constituted a representation to the plaintiff as a member of the public in the absence of clear notice to the contrary that the person in attendance upon the premises was an authorized representative of the defendant for the purposes of conducting the defendant’s business at any time between the indicated hours. Denied. As far as applicable to the case pleaded, I find, that the plaintiff did not see the sign in question before entering and, d,id- not rely on the words “Parking 8 A. M. to 6 P. M.” (5) The public display by the defendant of the sign bearing the words: ‘ ‘ Parking 8 A. M. to 6 P. M. ” constituted an invitation to the plaintiff as a member of the public in the absence of clear notice to the contrary to enter the defendant’s premises for the purpose of contracting for the parking of his automobile for a consideration at all times between the hours indicated upon the sign. Denied. As far as applicable to the case pleaded I find that the plaintiff did not see the sign in question nor rely upon the words “Parking 8 A. M. to 6 P. M.” (6) The defendant owed-to the plaintiff as a member of the public the duty to maintain an authorized attendant at the *163 defendant’s parking space at all times during the period that the defendant’s sign advertised the defendant’s parking space as being open for the defendant’s business. Denied. As far as applicable to the case pleaded I find that the plaintiff did not see the sign in question nor rely upon- the words “Parking 8 A. M. to 6 P. M.” (7) The failure of the attendant in the defendant’s employ to remain on duty at all times during the period that the defendant advertised the defendant’s parking space as being open for business constituted negligence toward the plaintiff as a member of the general public. Denied. Not applicable to case pleaded, or facts found. (8) The defendant by the failure of his regularly employed attendant to perform his duty to the defendant and the defendant’s duty to the plaintiff as a member of the general public by leaving the defendant’s place of business unattended during the period that the defendant’s parking space was advertised as being open for business without posting clear notice to the contrary that the defendant’s place of business was in fact unattended or closed for business is estopped from setting up as a defense that the contract made by or in behalf of the plaintiff apparently with the defendant or in the defendant’s behalf during such period for the safekeeping of the plaintiff’s automobile was made by an unauthorized person and therefore not with the defendant or in the defendant’s behalf. Denied. As far as applicable to the case pleaded I find that the plaintiff was not misled by any sign or advertisement of the defendant regarding the business hours maintained by the defendant and that the defendant did not know or have reason to foresee the illegal action of the unauthorised person. (9) The failure of the attendant regularly employed by the defendant to display clear notice to the contrary during the period that the defendant’s place of business was advertised as being open for business entitled the plaintiff to rely upon the contract or agreement made in the plaintiff’s behalf with a person apparently acting in behalf of the defendant whether such person was or was not in fact the authorized representative of the defendant. Denied. As far as applicable to the case pleaded I find that the plaintiff did not see the *164 sign in question nor rely upon the words “Parking 8 A. M. to 6 P. M.” Bee finding of fact. (10) The defendant had a duty at all times during the hours that his place of business was advertised as open for the defendant’s business to maintain attendants sufficient in number to exercise reasonable care toward the custody and safekeeping of automobiles driven onto the defendant’s premises for parking at the defendant’s invitation during such hours of business unless and excepting only during such periods as adequate measures reasonably designed to give notice to the public that the premises are unattended or closed have been taken by or in behalf of the defendant. Not applicable to case pleaded or facts found. (11) Wherever one of two innocent persons must suffer by the acts of a third, he who by his own conduct, act or omission or by that of his agent has enabled such third person to cause the loss must sustain it. Not applicable to case pleaded or facts found.
The court made findings of fact as follows:
‘11 find that the defendant operated a parking lot located on Beacon Street in Boston and that on Saturday, January 25, 1947, about 4 P. M. the defendant’s only attendant closed the lot for the day and withdrew from the premises, and I further find that the plaintiff was the owner of a motor vehicle which on the same day was in the custody of his wife and that some time about 4:30 P. M. she drove this vehicle on to the premises of the defendant’s parking lot. I find that she was then approached by a young man who asked for and received possession of the car and car key together with the sum of fifteen cents; she was given no claim check or other receipt for the car. I further find that when she returned the young man had disappeared and the vehicle had been taken away and Avas not recovered until after this action had been commenced and that the plaintiff sustained damage as a result.
*165 “I find that the defendant displayed a sign at the entrance to the lot reading ‘Parking 8 A. M. to 6 P. M.’ but I find that the plaintiff did not see the sign before entering the defendant’s lot and surrendering possession of the vehicle and in no way relied on the words referred to. I find that the person who took possession of the plaintiff’s vehicle was not in the employ of the defendant corporation nor authorized to act for it in any capacity whatsoever and that the defendant did not know or have reason to for-see his illegal action. I find as a fact that the plaintiff’s car was never delivered to the defendant or its servant or agent and that the defendant corporation did not convert the plaintiff’s motor vehicle and I further find that there was no contract of bailment between the plaintiff and the defendant corporation as alleged in the plaintiff’s declaration. ’ ’
Upon all the evidence the trial judge found as a fact that there was no contract made between the parties and found generally for the defendant.
The plaintiff has failed to sustain his burden of proof, to wit: that the plaintiff and defendant had entered into a contract of bailment. Although the case was tried thoroughly as indicated by the extensive and complete report, nowhere does the evidence warrant a finding that the plaintiff and the defendant had made a contract. The plaintiff’s principal contention appears to be that the defendant was negligent in not having somebody on the premises to enter into a contract of bailment with the plaintiff when he or his agent arrived there, or that the defendant was negligent because its employee or agent left the premises unattended in violation of his duty to the defendant. He cites no authorities in support of his contention, and he has no count in tort for negligence, his sole tort count being for conversion.
*166 If this were an action of tort for personal injuries suffered by one entering the premises by invitation, or for injury to an automobile entering the premises in compliance with the invitation, we would have a different case from the one here pleaded and tried. The duty owed to an invitee on premises as to the physical safety of himself or of his property is well established and represented by the long list of cases cited by the plaintiff in his brief. It is an entirely different proposition of law from the plaintiff’s contention that the law will thrust upon a person the liability of a bailee without his knowledge or consent.
Whether or not a contract of bailment exists is primarily a question of fact, especially where as here, all the evidence is testimonial. Unquestionably the trial judge believed the testimony of the plaintiff’s wife, who was the only person who knew anything about the episode of which the plaintiff complains.' The only other witness in the case being the defendant’s regular attendant who simply testified that he was not there; that he had left the premises earlier. Such testimony as the attendant gave was consistent with the testimony of the plaintiff’s wife who stated that she did not see the regular attendant.
Considerable argument has been directed to the sign that was posted on the premises stating the hours that the lot was open for business and the rates. To us it appears to be entirely immaterial whether or not the plaintiff’s wife saw the sign. 'Assuming she had seen the sign and became an invitee to the premises, it is of no consequence to the case pleaded and the evidence adduced. Neither she nor her husband, the plaintiff, claims any physical damage, or damage to the automobile on the premises.
Many contract cases have been cited by the plaintiff in his brief, but in those cases the existence of a contract of bailment invariably had been established as a fact and its *167 existence was not the subject of the opinion. The other cases cited have heretofore been referred to, and were actions based on the duty owed by the owner of premises to those invited thereto, sounded in tort, and were so tried and determined.
Finally, the plaintiff’s argument that the only testimonial evidence adduced at the trial was that of the plaintiff’s witnesses and that in view of the judge’s finding and ruling such evidence could not have been disbelieved, and therefore the case resembled an agreed statement of basic facts, fails to impress us. The ultimate fact which the trial judge found to be missing from the evidence was that of the making of a contract of bailment.
The following statement by Mr. Justice Pierce in Schulte v. North Terminal Garage, 291 Mass. 256 appears to be apt, “It is plain the law does not thrust upon one the liabilities of a bailee without his knowledge or consent, and equally obvious that while an acceptance may be implied the law will not infer such until there is something to show notice or knowledge of the alleged bailee that the goods are in fact in his possession.”
The requests for rulings do not appear to. require a detailed discussion seriatim.
Report dismissed.

 The trial court’s ruling and findings on each of the plaintiff’s Requests for Rulings are printed in italics following the request.